# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| KEVIN M. GREGG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:08-CV-160 |
| | ) |
| LOCAL 305 IBEW, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on *pro se* Plaintiff Kevin M. Gregg's motion for immediate TRO hearing which the Court construes as a motion to compel discovery. (Docket # 78.) Gregg seeks to compel Defendants Local 305 IBEW (the Union) and the Fort Wayne Electrical Joint Apprenticeship Training Committee, Inc. ("JATC") to respond to numerous discovery requests he claims are unsatisfied. Although his briefing on the point is rather unclear, he also objects to the form of the Union's submissions, apparently arguing that because they are not Bates stamped, he cannot verify that the documents he has received from the Union are the same as the documents that have been filed under seal, which he believes raises concerns about spoliation of evidence. For the following reasons, Gregg's motion to compel will be GRANTED in part and DENIED in part.

## I. BACKGROUND

Gregg filed his *pro se* complaint on June 26, 2008, alleging that the Defendants discriminated against him on account of his race when he was a union apprentice in the Joint

Electrical Apprenticeship Program.[1] (*See* Docket # 1.) On March 3, 2009, Gregg filed a motion for immediate TRO hearing and to compel discovery (Docket # 78), and the Court held a hearing on the motion on March 11, 2009 (Docket # 82). Following the hearing, the Defendants filed their response briefs on the motion to compel. (Docket ## 86, 86.) Gregg filed his reply on April 13, 2009 (Docket # 87), which narrowed the unresolved issues. Gregg, however, again asserted his concerns about spoliation and also took issue with the JATC's indication in its response brief that it would not commit to shouldering the cost of further discovery. The Court then called for supplemental briefing targeted on the remaining disputes (Docket # 89), and now the motion is fully briefed (*see* Docket ## 90, 91, 93).

## II. DISCUSSION

### *A. General Principles*

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Under the relevancy standard, "information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). For purposes of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Federal Rule of Civil Procedure 33 allows parties to serve upon each other interrogatories

---

[1] Gregg's complaint was subsequently amended twice, and a third motion to amend is currently pending before the Court. (*See* Docket ## 30, 37, 84.) This Opinion and Order assumes the reader is familiar with the underlying facts of the case.

relating to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a). Likewise, Federal Rule of Civil Procedure 34 empowers a party to serve on another party requests for the production of documents that are within the scope of Rule 26. Fed. R. Civ. P. 34(a). According to Federal Rule of Civil Procedure 37, if a party does not respond to a discovery request, the party seeking the discovery may move the Court to compel the opposing party to respond. *See* Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## B. *Analysis of Gregg's Discovery Requests*

### 1. *Discovery Requests Pertaining to Both the Union and JATC*

#### a. Request for Production No. 3

Gregg sought copies of "all signed contracts documents, including its signature pages, which existed between the defendant and all affiliated organizations . . . during the Plaintiff's term of employment (2005-2007) . . . [,]" including other information about the organizations; their officers and board members; and communications between the Union and those groups about policy changes, appointments, and membership termination. (Mot. to Compel 5.) Following the hearing and subsequent briefing, portions of Gregg's request were fulfilled, and Gregg's reply brief summarized those items he believed were left in dispute: 1) "signed modification documentation of any changes of the NJATC standards [and] any related documentation[,]" and revised copies, if any; 2) documents pertaining to appointments; and 3) the NJATC standards with signatures." (Reply Br. Ex. A 11-12.)

The course of supplemental briefing has further pared down the issue. JATC indicated

3

that it has produced the 2005 Standards and there is no subsequent version to produce. Moreover, JATC has produced information such as the names of each board member, date of appointment, dates of membership and offices held, and copies of the Minutes of the Meetings of the Board of Directors. If any appointment letters exist, it promises to supplement its discovery response. (JATC Sur-resp. 1-2.) For its part, the Union responded that documentation of NJATC standards are not within the Union's possession, custody, or control, and therefore it has no documents to produce. The Union also produced copies of letters between 2005 and 2007 reflecting the Union's appointment of members to the Board of the JATC. (Union's Sur-resp. 3-4.)

Despite these seemingly extensive responses to the request, Gregg's sur-reply contends that one aspect remains unresolved, pertaining solely to the Union. Gregg wants the Union to provide *its* copy of the NJATC standards, citing to a provision in the NJATC contract indicating that the Union would have received a copy. (Pl. Sur-reply 6-7.) Gregg's request will be denied.

Rule 26(b) sets forth the scope and limits of discovery, and provides that the "the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ." Fed. R. Civ. P. 26(b)(2)(C)(i). In this instance, Gregg has *already obtained* a copy of the document from another source, the JATC, making Gregg's request to the Union for its copy of the same document wholly cumulative and duplicative. Moreover, Gregg supplies no reasoning about why the Union's copy, as opposed to the copy he has already received, would be relevant, let alone probative. Consequently, the Court will deny Gregg's motion to compel a further response

4

to Request for Production No. 3.

      b.      Interrogatory No. 8[2]

Gregg provided the Defendants with six documents (amounting to approximately twenty-seven pages), which appear to be letters he wrote to members of the JATC committee and the Union's Grievance Committee from March to April 2007, detailing his allegations of discriminatory treatment, harassment, and retaliation. (*See* Pl.'s Initial Set of Interrogs. to Def. IBEW Local Union 305, No. 8, Exs. B-G; Pl.'s Intital Set of Interrogs. to Def. JATC, No. 8, Exs. B-G.) Gregg then asked the Defendants to indicate whether they claim Gregg's statements in these letters to be true, false, or incorrect; to identify the person having firsthand knowledge of the events; and where the Defendants believe a statement to be incorrect or false, to indicate a correct statement of the facts. (Mot. to Compel 7.)

Both Defendants objected on much the same bases: that the interrogatory requests irrelevant information; that it is vague and unclear; that it does not specifically ask for responses to identifiable questions; that it is overly broad and unduly burdensome; and that it is an attempt to evade the limits of the case management order. (*See* Union Resp. Br. 10-11; JATC Sur-resp. 3.) The Union's sur-response added that the request is not properly addressed to the Union because, as Gregg's reply indicates, he seeks individual responses from the three JATC Board Members and JATC instructors. (Union Sur-resp. 6-8.) Gregg, on the other hand, maintains that this information is relevant to what the Union knew about his discrimination claim and when they knew it, his terminations from the apprenticeship program and from the Union, and the

---

[2] Notably, Gregg did not actually include the JATC in his motion to compel on this interrogatory. In his sur-reply, however, he indicated that he wished the Court's order to apply equally to both parties. Because the request will be denied, the Court will address the interrogatory as to both Defendants.

Union's refusal to represent him or to give him access to the grievance process. (Reply. Br. Ex. A 14-15.)

Indeed, Gregg's Interrogatory No. 8 is improper. To begin, what Gregg is requesting essentially amounts to a narrative response to each of the complaints and arguments in his six letters. Thus, Gregg is effectively gathering a slew of imprecise discovery requests about the facts of his allegations under the umbrella of a single interrogatory, amounting to an inappropriate attempt to avoid the requirements of the case management order limiting the number of interrogatories to fifty. *See, e.g., Wilson v. Kautex*, No. 1:07-CV-60, 2008 WL 162645, at *4 n.4 (N.D. Ind. Jan 14, 2008) (noting that a Court can deny a motion to compel if the party's request "far exceeds the bounds of discovery").

Furthermore, to the extent that Gregg wishes for the defendants to indicate the truth or falsity of each of his allegations, his discovery request seems more akin to a request for admissions. And in that regard, the statements within the documents referred to in Interrogatory No. 8 do not qualify as proper requests for admissions. The form of the letters, amounting to a narrative account of Gregg's accusations and contentions, do not meet Federal Rule of Civil Procedure 36's mandate that "[e]ach matter . . . be separately stated." Fed. R. Civ. P. 36(a)(2). Moreover, requests for admission should be "simple, direct, and concise so they may be admitted or denied with little or no explanation or qualification." *Vukadinovich v. Griffith Public Schools*, No. 2:02 cv 472, 2008 WL 5141388, at *5 (N.D. Ind. Dec. 5, 2008) (citing *Sommerfield v. City of Chicago,* 251 F.R.D. 353, 355 (N.D. Ill. 2008)). Gregg's twenty-seven pages of narratives, requiring the Defendants to sift through numerous statements to guess concerning which statements in the letters they should respond to, could hardly be said to meet these basic

requirements.

In addition, to the extent that the interrogatory seeks statements specifically from the committee members and JATC instructors, the request is inappropriately directed to the Union, because, as it emphasized in its sur-response, the Union does not speak for those individuals. Consequently, Gregg's Motion to Compel responses from the Union and JATC to his Interrogatory No. 8 will be denied.

  c. <u>Interrogatory No. 10</u>

Gregg presented the same vague and confusing interrogatory to both the Union and JATC:

> Has the Defendant . . . taken any additional actions to insure [sic] that its board committee and acting agents (if any) are aware of such claimed acts and/or circumstances since the Plaintiff claims [sic] of racial harassment/discrimination and various disparate treatment experienced under the control of its appointed training director and agents?

(Reply Br. Ex. A 15. 20.) Gregg further sought details about the action taken; the name, title, and race of the person responsible; and the date the new measures were implemented. (Mot. to Compel 7-8, 11.) Gregg asserts that his request is relevant to determine the extent of the Union's involvement in and knowledge of his discrimination claim, his terminations from the apprenticeship program and the Union, and the Union's refusal to represent him or give him access to the grievance process. (Reply Br. Ex. A 16.) )

The Union objected that the interrogatory requests irrelevant information; is vague and unclear; is improper because it assumes facts not in evidence; and it begs a speculative or hypothetical answer. (Union Resp. Br. 11-12.) Furthermore, to the extent it seeks information about when the Union became aware of Gregg's discrimination claims, it has already provided

7

that information in its response to Interrogatory No. 5. (Union Sur-rep. 8.) The JATC objected on similar grounds, adding that it seeks privileged information and that it seems like Gregg is improperly seeking admissions. (JATC Resp. Br. 4.)

The Defendants' objections are well-taken. The language of the interrogatory is difficult to follow, and its reference to unspecified "acts and/or circumstances" compounds the confusion. Even Gregg seems uncertain about what information he seeks; although he apparently argues that this request pertains to the actions the Defendants took to ensure that the committee and its agents were made aware of his complaints, he also stated that this is a "yes or no question." (*See* Reply Br. Ex. A 20.) Moreover, at least with respect to the Union, this interrogatory seems duplicative, since the Union already supplied an answer in Interrogatory No. 5 about when it became aware of Gregg's complaints. This interrogatory is simply too vague for the Court to compel a response. *See, e.g., Link v. Taylor*, No. 1:07-cv-338, 2009 WL 127660, at *3 (N.D. Ind. Jan. 20, 2009) (denying *pro se* plaintiff's motion to compel response to a request for production because the request was incomprehensible); *Shelley v. Hoenisch*, No. 08-cv-107-bbc, 2008 WL 2489927, at *2 (W.D. Wis. June 19, 2008) ("If plaintiff wants information from defendants, he must ask simple questions that are clear to the reader and can be answered with simple responses.").

    d.    <u>Interrogatory No. 11</u>

Gregg asked both Defendants whether they contend that "the acts and/or circumstances that form the basis of [Gregg's] complaint were not offensive to a reasonable person with [Gregg's] heritage[,]" and if yes, to state the basis for this contention. (Mot. to Compel 8, 12.) Gregg insists that his request is legitimate based on his review of other court filings, and that it is

8

a simple "yes or no question" and inquires about whether the behavior he claims he was subjected to would commonly be considered offensive. (Reply Br. Ex. A 17, 21.)

For the same reasoning articulated above concerning Interrogatory No. 10, the Court will not compel the Defendants to respond in Interrogatory No. 11. The Court agrees with the Defendants that it is unclear what specific acts and circumstances Gregg is referring to and what he means by "a reasonable person with [Gregg's] heritage." Even if the Court were to accept the interrogatory as sufficiently clear, it nevertheless ostensibly calls for the Defendants to speculate about what other unspecified individuals would consider offensive. Accordingly, Gregg's motion to compel responses from the Union and JATC to Interrogatory No. 11 will be denied.

e. Interrogatory No. 13

Like the preceding interrogatories, Gregg's Interrogatory No. 13 is confusingly phrased, although it appears to be in the nature of a contention interrogatory. It reads as follows:

> 13. Please indicate and/or produce the following information regarding any of the paragraphs of the [Defendants'] answers[s] and affirmative defenses:
> a. All facts of which [Defendants] ha[ve] knowledge supporting identifying said paragraph with said facts;
> b. The names and last known addresses of persons with knowledge of the facts in subsection (a) identifying said person with said facts; and
> c. Identification of and copies of all documents which support any of the aforementioned paragraphs, identifying which paragraphs is supported by which document.

(Mot. to Compel 9, 12.)

The Union again objected that the interrogatory was not sufficiently specific and appears to be an attempt to evade the limits of the case management order. The Union also objected that it is vague, compound, and unclear, but stated that it had previously identified as part of its Rule 26(a)(1) initial disclosures the witnesses and documents that it intends to use to support its

answer and affirmative defenses. In its response brief, the Union noted that Gregg is free to take the depositions of any witnesses to obtain further information, or he can narrow the scope of his interrogatory to make it clearer. (Union Resp. Br. 14-15.) The JATC similarly objected, noting that it would unreasonably require JATC to track every paragraph of its answer and affirmative defenses and provide the equivalent of a narrative account of its case; that it seeks privileged information; and that it amounts to an abuse of the discovery process. (JATC Resp. Br. 5-6.) In defending the propriety of his request, Gregg explains, "It is not unreasonable to request identification and supporting information pointing out the appropriate identification (Bates stamps, etc) related to defendant's answers and affirmative defenses by whom the affirmative answers were given which they rely on." (Pl. Sur-reply Ex. A 11, 15.)

"Contention interrogatories can be classified as questions asking a party to: 'indicate what it contends or whether the party makes some specified contention [;] . . . state all facts or evidence upon which it bases some specific contention; take a position and apply law and facts in defense of that position; or explain the theory behind some specified contention.'" *BASF Catalysts LLC v. Aristo, Inc.*, No. 2:07-cv-222, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009) (quoting *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)). "The basic premise of a contention interrogatory is to require a party to commit to a position and to give support for that position." *Id.* (citing *Ziemack*, 1995 WL 729295, at *2).

At this juncture, Gregg's motion to compel answers to his contention interrogatory will be denied. To begin, Gregg's interrogatory encompasses virtually every factual basis for all of the Defendants' contentions. *See* 7-33 *Moore's Federal Practice - Civil* § 33.78 (explaining that contention interrogatories "must be specific, intelligible, and narrowly tailored for the case").

10

To respond would be an unduly burdensome task, since it would require the Defendants to produce veritable narratives of their entire case. *See IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("To the extent [the requests] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). "To require specifically 'each and every' fact and application of law to fact . . . would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details. The burden to answer then outweighs the benefit to be gained." *Id*. (also noting that "[o]ther discovery procedures, such as depositions and production of documents, better address whatever need there be for that kind of secondary detail"); *see also Norwood v. Radtke*, 2008 WL 3852083, at *2 (W.D. Wis. Feb. 26, 2008) ("[P]laintiff cannot simply ask defendants to give him a copy of everything . . . that they intend to use to defend against his claims. This puts an impossible burden on defendants and it invades their attorney-client and work product privileges.").

Of course, Gregg is free to ask contention interrogatories, but he must be more specific or narrow their scope. *See, e.g., Davis v. City of Springfield, Ill.*, Nos. 04-3168, 07-3096, 2009 WL 268893, at *7 (C.D. Ill. Jan. 30, 2009) (compelling defendant to respond to an interrogatory requesting for each of its twelve affirmative defenses that the defendant "state the facts upon which it bases the defense, . . . identify any person known to have personal knowledge of each fact, and . . . identify any document that memorializes any fact or otherwise supports its assertion of the affirmative defenses"); *see also Norwood*, at *2 ("Plaintiff may pose some carefully-crafted contention interrogatories or ask for documents on specific topics, but it is

11

improper for a party to demand that his opponent run an extra copy of everything and send it to him for his file.").

Moreover, "[i]n the interest of judicial economy and fairness, the answers to contention interrogatories often are delayed until the end of discovery." *BASF Catalysts LLC*, 2009 WL 187808, at *2; *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time. "). In this instance, discovery will not close until September 30, 2009. Consequently, contention interrogatories at this stage are premature, and Gregg offers no reasoning why the Defendants should provide early answers. *See BASF Catalysts LLC*, 2009 WL 187808, at *2 (noting that a court may require answers to early contention interrogatories to meet "[t]he twin aims of efficiency and fairness"); *In re H&R Block Mortgage Corp., Prescreening Litig.*, No. 2:06-MD-230, 2006 WL 3692431, at *4 (N.D. Ind. Dec. 13, 2006) (noting that "contention interrogatories may not be answered until, at the earliest, after substantial discovery has taken place, or at the latest, at the final pre-trial conference" and finding that the defendant failed "to cite a specific, substantive reason as to why it requires early answers to the contention interrogatories"). Accordingly, the Court will not compel the Defendants to respond to Interrogatory No. 13 at this juncture and as it is currently framed.

    2.    *Remaining Discovery Requests to the Union*

    a.    <u>Interrogatory No. 2</u>

Gregg seeks a variety of information about all African Americans who are or were

members of the Union within the last ten years: their names and contact information; the identities of their apprenticeship training directors; any disciplines received; any dates of termination; and the positions and names of the decision-makers involved in their terminations. (Mot. to Compel 6.)

The Union objected that the interrogatory seeks irrelevant information; is overly broad and unduly burdensome both temporally and substantively; and is vague and ambiguous. The Union interpreted the request as seeking records related to African American apprentices in the JATC, and stated that it does not maintain records on the apprentices' discipline and tenure, although it receives documents from JATC which the JATC has already provided to Gregg. The Union further maintains that Gregg's allegations in his second amended complaint pertain only to his termination from the apprenticeship program, and therefore any claims that the Union committed race-based discrimination (in contrast to the JATC) are outside the scope of the second amended complaint. (Union Sur-resp. 4-6.) As such, in the Union's view, information about Union members (as opposed to apprentices) is irrelevant.

Gregg insists that his claims stem not only from the JATC's actions, but also the Union's, and that other African American Union members may have knowledge of disparate treatment under both Union leadership and the JATC. He believes that there is a potential African American witness who was terminated from the apprenticeship program but later allowed into the Union. Gregg adds that the request is not unduly burdensome because there are only a few black apprentices, estimating about ten out of 600. (Pl. Sur-Reply Ex. A. 7-8.)

"The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006)

13

(citations omitted); *accord McGrath v. Everest Nat'l Ins. Co.*, No. 2:07 cv 34, 2008 WL 2518710, at *10 (N.D. Ind. June 19, 2008); *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006) ("If the party from whom the documents are requested objects to their production, that party has the burden to show why a discovery request is improper."). Because the Union has not carried that burden, Gregg's request will be granted in part.

To begin, limiting discovery solely to apprentices, as the Union suggests, would be inappropriate. In addition to Gregg's discrimination claims arising from the actions of JATC and its members, Gregg also alleges that the Union treated him unfairly by permitting the discrimination and harassment and by failing to provide him with Union representation or information pertinent to his Union appeal. (*See, e.g.,* Pl.'s 2nd Am. Compl. 1, 2, 5-6.) Therefore, information about other African American Union members, regardless of whether they are apprentices, could be relevant to Gregg's claims of disparate treatment. *See, e.g., Rainey v. Plainfield Comm. Consol. Sch. Dist. No. 202*, No. 07 C 3566, 2008 WL 4775975, at *3 (Oct. 24, 2008) (compelling defendants in employment discrimination case to answer interrogatory regarding the identification of other employees terminated and the reasons why); *Wilson*, 2008 WL 162645, at *6 (compelling defendant to answer plaintiff's interrogatory inquiring about other African American employees in the office where she worked); *Kern v. University of Notre Dame Du Lac*, No. 3:09–CV-406-RM, 1997 WL 816518 at*2-3 (N.D. Ind. Aug. 12, 1997) (compelling answer to interrogatory seeking information about other faculty members in the same college where the plaintiff was employed and allegedly suffered discrimination and a hostile work environment). Moreover, limiting the scope of this

14

interrogatory to apprentices would foreclose the opportunity for Gregg to acquire potentially relevant information about a particular African American Union member who he contends was also terminated from the apprenticeship program.[3]

Furthermore, responding to this interrogatory would not be an unduly burdensome task, particularly since Gregg estimates that there are only about ten African American Union members and the Union has not demonstrated otherwise. *See Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." (citing *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 543 (N.D. Ind. 1991))); *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990) ("[T]he objecting party must specify the nature of the burden and provide specific explanations as to why the interrogatory cannot be answered."). In short, the burden of producing this discovery does not outweigh its potential benefit, *see Sills v. Bendix Commercial Vehicle Sys., LLC*, No. 1:04-CV-00149, 2005 WL 2777299, at *2 (N.D. Ind. Mar. 3, 2005) (noting that the Court may limit discovery if it determines that the burden of the discovery outweighs its likely benefit), and therefore the Court will compel the Union to answer Interrogatory No. 2.

Nevertheless, the Court agrees with the Union that the ten-year time period is overly broad. The Court will limit the time frame to January 1, 2003 (approximately two years prior to Gregg's apprenticeship efforts), to the present. *See, e.g., Tomanovich v. Glen*, No. IP 01-1247 C

---

[3] The Court also rejects the Union's arguments that it should not be compelled to provide the information it possesses from the JATC about the other apprentices. Although Gregg has apparently received the apprentice files from the JATC, it is not evident that the documentation the Union has would be the same as what the JATC produced for Gregg. Consequently, the Union should also produce the records about the apprentices that it received from the JATC and which it apparently maintains in the individual members' files.

Y/K, 2002 WL 1858795, at *2 (S.D. Ind. Aug. 13, 2002) ("A time period of five years is reasonable and appropriate in a case such as this alleging disparate treatment where plaintiff may utilize statistical evidence to establish a prima facie case of discrimination."). Accordingly, Gregg's motion to compel an answer from the Union to Interrogatory No. 2 will be granted in part and denied in part.

      b.    <u>Interrogatory No. 14</u>

Interrogatory No. 14 is, like many of Gregg's other requests, difficult to decipher. Although Gregg is apparently seeking information about the what the Union and its "committee members" knew about policies pertaining to apprentices from 2006 to 2007[4] (Mot. to Compel 9), the Court agrees with the Union that it is ambiguous. Moreover, the request seems to ask about the apprenticeship program's policies, and therefore, as the Union persuasively asserts, pertains to the JATC, not the Union. On that score, Gregg can obtain – and apparently already has

---

[4] Interrogatory No. 14 reads as follows:
14. Please identify all policies the defendant (Local 305 committee members and acting agents) had been provided a copy of or had knowledge of prior to the plaintiff's termination, which were also applicable to all apprentices during the years 2006 thru [sic] 2007 (to include but not limited to all written practices, rules, standards, constitutions, CBA, etc . . . ) include [sic] specifically the following:

a. those Local 305 committee members an[d] acting agents who were not provided or had no prior knowledge of the identified policies (prior to the plaintiff's termination) specify [sic] those policies not so disclosed to the those individuals;

b. those Local 305 committee members and acting agents who were provided or had prior knowledge of the policies being identified (Prior to the plaintiff's termination) specify [sic] those policies so disclosed; and

c. specifically which of the written rules or policies the defendant claims were implemented and enforced (by its Local 305[] committee members and acting agents) accordingly or followed in compliance to that which was written and was applied fairly and equally as was or would be afforded to its white members;

d. and if it was not followed as written indicate why and under what authority permitted the deviations from the written applicable policies in question and indicate the date and the specific deviation that took place for which the defendant partook of.

16

obtained (*see* Union Resp. Br. 16-17) – those policies directly from the JATC. Consequently, Gregg's motion to compel will be denied as to Interrogatory No. 14 to the Union.

      c.      <u>Requests no longer in dispute</u>

The briefing on this motion reveals that Interrogatory Nos. 5 and 12 are no longer in dispute.

      *3. Remaining Discovery Requests to the JATC*

      a.      <u>Interrogatory No. 9</u>

This interrogatory posed a vague question to the JATC which Gregg recast in his reply brief as follows: "Should supervisors and acting agents reasonably be expected to have knowledge of the circumstances surrounding and leading up to Gregg's claim of discrimination and disparate treatment[?]" (*See* Mot. to Compel 11; Reply Br. Ex. A 20.)

The Court agrees with the JATC that Interrogatory No. 9 is vague and confusing. It is unclear specifically what "circumstances" Gregg is referring to, and again seems to be more in the nature of a request for admission that is not adequately particular. Gregg's motion to compel as to Interrogatory No. 9 will be denied.

      b.      <u>Requests no longer in dispute</u>

The briefing on this motion reveals that Interrogatory Nos. 2 and 3 are no longer in dispute.

### C. Analysis of Gregg's Claim that JATC Should Continue to Shoulder the Burden of Discovery Costs

In its response brief, JATC explained that it produced approximately 5,000 pages of responsive documents, including the apprenticeship files of forty-two individuals, and that it further commits to producing twelve more apprenticeship files. JATC also noted, however, that

it makes no commitment to shoulder the cost of further discovery. (JATC's Resp. Br. 1-2.) Gregg objects to the JATC's refusal to pay for additional discovery, arguing that he attempted to eliminate all unnecessary costs. (Reply Br. Ex. A 4-6.) Gregg's objection, however, is moot because JATC is not compelled to produce further discovery at this stage. If JATC ultimately produces more discovery (for example, in response to any re-framed contention interrogatories Gregg may yet pose), then the parties will be free to raise the issue with the Court at that time. As the Court previously noted (*see* Docket # 89), however, the requesting party is typically responsible for the cost of copying the requested documents. *See, e.g., Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996) (ordering that the plaintiff may copy the requested documents himself or pay the defendant a reasonable copying cost).

### D. Analysis of Gregg's Concerns About the Union's Submissions

Gregg complains that the Union's submissions are not Bates-stamped and therefore he cannot verify that the information provided to him is the same as the material produced under seal. (Reply Br. 7.) Gregg states that if he cannot "validate" the submissions, then he will seek to modify the protective order to make the documents filed under seal viewable (only redacting personal identifiers). (Reply Br. 7.)

The Union indicated in its sur-response that Gregg had sent correspondence acknowledging that he was satisfied with the form of the Union's submissions, which it interpreted as Gregg withdrawing his request that the documents be Bates-stamped. (Union Sur-resp. 2, Ex. A.) Gregg's sur-reply, however, seems to indicate that although he has no objection to the form of the Union's submissions at this point, "as they are categorized in an understandable grouping" (Pl. Sur-reply 3), he remains concerned that the Union's productions

"cannot be validated apart from spoliation should discrepancies arise . . . ." (Pl. Sur-reply 3.) As the Court interprets Gregg's brief, he still wants to verify that the materials he received from the Union are the same as what it submitted to the Court.

Despite Gregg's concerns about spoliation, he offers no evidence that the Union has altered or destroyed evidence or otherwise acted in bad faith. *See Vukadinovich v. Griffith Pub. Sch.*, No. 2:02 cv 472, 2008 WL 5377720, at *1 (N.D. Ind. Dec. 19, 2008) (explaining that a spoliation sanction is proper when a party has destroyed documents in bad faith or when it "persistently fails to comply with discovery orders and displays wilfulness, bad faith or fault in doing so" (internal quotation marks omitted)); *see also Forrest v. All Cities Mortgage & Fin., Inc.*, No. 06-C-424, 2007 WL 3026787, at *1 (E.D. Wis. Oct. 16, 2007) (noting that a party's "duty to prevent spoliation of relevant evidence is inherent in the judicial process").

Although Gregg's spoliation concerns appear unfounded, his objection to the form of the Union's responses is not entirely without merit. While "there is no rule, per se, requiring [parties] to sequentially number documents, they are incorrect in thinking they can haphazardly produce documents without reference to which request the documents are produced." *Glover v. Bd. of Educ. of Rockford Pub. Sch., Dist. 205*, No. 02 C 50143, 2004 WL 785270, at *2 (N.D. Ill. Apr. 12, 2004). To ensure a fair and clear record, the Union will be "ordered to Bates Stamp all documents produced to Plaintiff and to indicate which documents correspond to the categories requested." *Id.*; *see also Flentye v. Kathrein*, No. 06 C 3492, 2007 WL 2903128, at *2 (N.D. Ill. Oct. 2, 2007) (requiring a party to produce Bates-stamped documents comprising the initial disclosures required under Rule 26).

## III. CONCLUSION

For the reasons stated herein, Gregg's motion to compel discovery responses (Docket # 78) is GRANTED in part and DENIED in part as follows:

1) Gregg's motion to compel responses to Interrogatory No. 2 to the Union is GRANTED in part and DENIED in part, and the Union is ORDERED to respond by May 27, 2009;

2) Gregg's motion to compel responses to the remaining interrogatories and the Request for Production No. 3 is DENIED;

3) Gregg's request that the Union Bates stamp its submissions in GRANTED, and it must comply by May 27, 2009;

4) Gregg's request that JATC continue to pay the costs of production is DENIED as MOOT.

SO ORDERED.

Enter for the 13th day of May, 2009.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge